UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:11-CV-332

ELIZABETH MITCHELL, et al.                                                              PLAINTIFFS

V.

HOME DEPOT U.S.A., INC., et al.                                                          DEFENDANT

## MEMORANDUM OPINION & ORDER

This matter is before the Court upon Defendant's motion for a Rule 35 examination of Plaintiff (DN 30).  Fully briefed, this matter is ripe for adjudication.  For the following reasons, Defendant's motion is GRANTED IN PART.

### BACKGROUND

On April 30, 2010, Plaintiff Elizabeth Mitchell and her husband, Plaintiff Robert Mitchell, were in a Home Depot store located at 10301 Westport Road in Louisville, Kentucky. While walking through the aisles in the garden center, the wind blew thin plastic wrapping off of a stack of mulch and wrapped around Mrs. Mitchell's legs, causing her to fall and injure her left wrist.  Mrs. Mitchell described her fall-related problems in her interrogatory answers as follows:

> As a result of Defendants' negligent actions causing her fall at Home Depot on April 30, 20120, Elizabeth Mitchell has suffered significant pain and emotional suffering.  She sustained an intra-articular, distal radius fracture on her left side.  Her wrist was broken into twenty pieces.  The fracture was so severe, she was required to undergo an open reduction with internal fixation of the distal radius fracture with two intra-articular fragments.  Two plates, nine screws and artificial bone had to be implanted in Elizabeth's wrist during the surgery.  During her hospital admission for this surgery, Elizabeth developed thrush, and suffered from severe nausea and vomiting that required treatment with Phenergan.

> Several months after her fall, despite completing physical therapy and following all her physicians' instructions, Elizabeth was still in a lot of pain.  Her wrist did not completely heal after the surgery, and it created a danger that the implanted plates that were inserted might cause her tendons to rupture.  Even in November 2010, Elizabeth still had only limited use of her left arm.  Although Elizabeth

never had arthritis in her left wrist and arm before the fall, her injuries and the surgery caused her to suffer from it. The arthritic condition of her left arm limits the use of her thumb in that hand.

In September 2010, Elizabeth visited Dr. Tate for another follow-up visit. Dr. Tate noted that Elizabeth experienced pain and tearfulness upon examination of the hardware that he placed in her wrist during surgery. Dr. Tate was not satisfied with the degree of discomfort that the hardware was causing Elizabeth so he recommended that she undergo another surgery to have it removed. Dr. Tate performed the second surgery on Elizabeth's left wrist on November 22, 2010. Elizabeth is still experiencing pain after the second surgery, but it has improved somewhat. She still had to use her brace, especially when she went outdoors or was in crowds.

In January 2011, Dr. Tate informed Elizabeth that the fall and related surgeries had caused her to have DeQuervain syndrome in her left wrist, which is causing additional pain and limitations in the range of movement of her wrist and thumb. Currently, DeQuervain syndrome prevents Elizabeth from using her left hand to grasp large objects and to twist and turn objects. Because of DeQuervain syndrome, Elizabeth cannot do simple tasks, such as opening a jar, washing a large skillet, and lifting anything other than light objects. Elizabeth cannot pull her wrist up to a ninety degree angle. Elizabeth's wrist causes constant pain and discomfort. While she would typically rate the level of pain in her left wrist at a three or four, the pain level increase to a six or seven when she tries to use her wrist.

Elizabeth continues to have problems with daily activities, including driving, lifting, and light to medium housework and dressing. Dr. Tate informed Elizabeth that there is nothing he can do to cure the DeQuervain syndrome. He expects that her pain will continue and that it will worsen. Eventually, the pain will become so severe and her ability to use her thumb will be so limited that Elizabeth will need to have yet another surgery.

This fall has also caused Elizabeth to have significant emotional pain and suffering. Before the fall, Elizabeth was a vibrant and active teacher. Now, she feels like a "really old lady." When she rides in cars, she holds onto armrests out of fear that her wrist might get injured again. Elizabeth is unable to enjoy the activities that once gave her pleasure such as hiking and walking outdoors with her husband due to her fear of falling. In fact, all of her routine daily activities are performed with additional caution for fear of reinjuring her wrist and arm. She suffers from depression due to the pain she experiences, her loss of independence, and her inability to take part in the activities she cherishes.

As a result of the physical and mental suffering and multiple surgeries Elizabeth has endured, Robert Mitchell has been forever deprived of the level of companionship and consortium he shared with his wife prior to April 30, 2010.

> They can no longer enjoy activities together such as yard work and hiking, he has been forced to assume responsibility for nearly all of the housekeeping Elizabeth provided to their household, he had to assist Elizabeth with activities of daily living such as dressing, and her physical and mental pain and suffering has significantly strained their marital relationship.

Mitchell's Answers to Interrogatories, DN 38-1 at ¶ 3. Mrs. Mitchell's answers to interrogatories also reveal that she has had "hip surgeries." A statement from Dr. Amy Greenamyer, another healthcare provider disclosed by Mrs. Mitchell, stated that Mrs. Mitchell has a history of fibromyalgia, broken bones including ankles and toes, and two hip replacements.

## DISCUSSION

Home Depot now moves the Court to order Mrs. Mitchell to submit to a Rule 35 examination by Dr. Thomas Gabriel, a board-certified orthopedist, on April 18, 2012. Plaintiffs oppose Home Depot's motion, arguing that Home Depot has not shown good cause for the examination and that Home Depot has failed to specify the "manner, conditions, and scope of the examination." Plaintiffs also state that Mrs. Mitchell is not available on April 18, 2012.

**1. Rule 35 Examination**

Federal Rule of Civil Procedure 35 provides that, upon motion for good cause and notice to all parties and the person to be examined, "the court where the action is pending may order a party whose mental or physical condition – including blood group – is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1)-(2). Thus, as an initial requirement, the court must decide whether Home Depot has demonstrated Rule 35's "in controversy" and "good cause" requirements. In some situations, the pleadings alone are sufficient to meet these requirements. *Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964). For example, "[a] plaintiff in a negligence action who asserts mental or physical injury . . . places that mental or physical injury clearly in controversy and provides the defendant

with good cause for an examination to determine the existence and extent of such asserted injury." *Id*.  Here, Mrs. Mitchell asserts physical and mental injuries as a result of Home Depot's alleged negligence.  Accordingly, Home Depot has met Rule 35's "in controversy" and "good cause" requirements for a physical examination of Mrs. Mitchell in order to determine the existence and the extent of her asserted injuries.

**2.  Scope of Examination**

Having determined that a Rule 35 examination of Mrs. Mitchell is justified, the Court "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it."  Fed. R. Civ. P. 35(a)(2)(B).

Plaintiffs requests the Court to limit the examination to Mrs. Mitchell's left wrist and lower arm and to prohibit any invasive procedures or laboratory or diagnostic imaging tests.  Home Depot opposes such a limitation on the scope of the examination, arguing that Mrs. Mitchell has placed "her whole body and in fact her whole being" in controversy in this case and that Mrs. Mitchell's existing orthopedic medical problems could be contributing to her current situation.  The Court will not limit the examination of Mrs. Mitchell to the extent requested by Plaintiffs; however, the Court will limit the examination to matters of an orthopedic nature that are relevant to the specific physical injuries and symptoms alleged by Mrs. Mitchell.  Dr. Gabriel will be permitted to perform routine and minimally invasive procedures and diagnostic imaging tests (such as x-rays, CT scans, MRIs, and blood tests) to the extent that they are relevant to the specific physical injuries and symptoms alleged by Mrs. Mitchell.  Within these parameters, the Court declines to intrude upon Dr. Gabriel's expertise in deciding how to administer the examination.

Plaintiffs next request that counsel for Plaintiffs and Mrs. Mitchell's husband, Plaintiff Robert Mitchell, be permitted to be present during the exam to make Mrs. Mitchell more at ease and to prevent any unnecessary interrogation by the examining physician.  Plaintiffs also request that the examination be videotaped.  Although a number of states allow a party's attorney to observe a Rule 35 physical examination, the weight of federal authority favors the exclusion of plaintiff's attorney from such an examination in the absence of a compelling reason.  *See, e.g. Holland v. United States,* 182 F.R.D. 493 (D.S.C. 1998)*, Wheat v. Biesecker,* 125 F.R.D. 479 (N.D.Ind.1989); *Cline v. Firestone Tire & Rubber Co.,* 118 F.R.D. 588 (S.D.W.Va.1988); *McDaniel v. Toledo, Peoria & Western R.R. Co.,* 97 F.R.D. 525 (C.D.Ill.1983); *Brandenberg v. El Al Israel Airlines,* 79 F.R.D. 543 (S.D.N.Y.1978); *Warrick v. Brode,* 46 F.R.D. 427 (D.Del.1969); *Dziwanoski v. Ocean Carriers Corp.,* 26 F.R.D. 595 (D.Md.1960).   This is because a Rule 35 medical examination should not be an adversarial encounter.  "The very presence of a lawyer for the examined party injects a partisan character into what should otherwise be a wholly objective inquiry."  *Warrick*, 46 F.R.D. at 428.  Counsel's concerns regarding the possibility of unnecessary interrogation is alleviated by counsel's ability to confer with Mrs. Mitchell regarding the examination, review Dr. Gabriel's report, depose Dr. Gabriel, and cross-examine Dr. Gabriel at trial.  *See Abdulwali v. Washington Metro Area Transit Authority*, 193 F.R.D. 10, 14 (D.D.C. 2000).  Additionally, exclusion of any statements made by Mrs. Mitchell during the Rule 35 examination relating to non-medical matters would protect Mrs. Mitchell against any admission which may affect her rights while still allowing the physician to conduct the examination in the manner he deems proper.  *See Dziwanoski v. Ocean Carriers Corp*., 26 F.R.D. 595, 598 (D. Md. 1960). Accordingly, Plaintiff's attorney will not be allowed to be present during the Rule 35 examination.

Additionally, the Court will not allow Mrs. Mitchell's husband to be present at the Rule 35 examination and will not allow the examination to be videotaped. Plaintiffs have presented no exceptional circumstances that the presence of her husband or a recording device is necessary. *See Holland*, 182 F.R.D. at 495. The majority of federal courts have rejected the notion that a third party should be allowed at a Rule 35 examination, even indirectly through a recording device. *Id*. A recording device would constitute a distraction and would lend a degree of artificiality to the examination. *See Romano v. II Morrow, Inc.*, 173 F.R.D. 271 (D. Or. 1997) and *Tomlin v. Holecek*, 150 F.R.D. 628 (D. Minn. 1993). Additionally, the presence of her husband and a videographer or a recording device could influence Mrs. Mitchell, even unconsciously, to exaggerate or diminish her reactions to the physical examination. *See Holland*, 182 F.R.D. at 495.

Lastly, Plaintiffs state that Mrs. Mitchell is unavailable for the April 18, 2012 examination unilaterally scheduled by Defendants. Defendants contend that postponing the date could be a problem because of Dr. Gabriel's limited availability. Clearly the Rule 35 examination cannot occur if Mrs. Mitchell is unavailable. The Court is confident that the parties can confer and arrange an alternate date for the examination.

## CONCLUSION

For the foregoing reasons, Defendant's motion (DN 30) is GRANTED in part. The Court will order a Rule 35 examination of Mrs. Mitchell. The scope of such an examination will be limited to the extent set forth in this opinion. Mrs. Mitchell's attorney and husband will not be allowed at the Rule 35 examination, and the examination will not be videotaped. Finally, the parties will confer and arrange an alternate date for the examination.